CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 05 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JULIA GARLICK PHILLIPS, | Civil Action No.: 7:12-cv-194 |
| Plaintiff, | MEMORANDUM OPINION |
| v. | Hon. James C. Turk |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | Senior United States District Judge |
| Defendant. | |

Plaintiff Julia Garlick Phillips ("Plaintiff" or "Phillips") brought this action for review of Defendant Michael J. Astrue's ("the Commissioner") final decision denying her claim for disability insurance benefits ("DIB") under the Social Security Act ("the Act"), as amended 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq. This Court has jurisdiction over the action pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). Both Phillips and the Commissioner filed motions for Summary Judgment. The Court heard oral argument on January 3, 2013 and the motions are now ripe for disposition.

The ultimate issue before the Court is whether substantial evidence supports the Commissioner's final decision that Phillips can perform the limited range of light work identified by the vocational expert. For the reasons stated below, the Court finds that substantial evidence supports the Commissioner's final decision. Accordingly, the Commissioner's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

I.  STANDARD OF REVIEW

When reviewing the Commissioner's final decision, the Court's review is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner reached those findings through application of the correct legal

1

standards. See 42 U.S.C. § 405(g); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). The Commissioner's finding of any fact is conclusive provided it is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401; Hancock, 667 F.3d at 472. Substantial evidence is not a "large or considerable amount of evidence." Pierce v. Underwood, 487 U.S. 552, 565 (1988). It "consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock, 667 F.3d at 472 (citation omitted).

If the Commissioner's determinations are supported by substantial evidence, a reviewing court may not substitute its judgment for the Commissioner's, but instead must defer to those determinations. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); 42 U.S.C. § 405(g). Accordingly, "[i]n reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ . . . . Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal alterations and citations omitted).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Phillips was born in 1959, was 48 years old at the time she alleges she became disabled and was 50 years old at the time of the ALJ's decision, which places her in the category of "person closely approaching advanced age." R. 26-27.[1] She obtained a GED in 1980 and has previous work experience as a cashier, a stock clerk, a certified nursing assistant ("CNA"), and a licensed practical nurse ("LPN"). R. 26, 194. Phillips alleges that she became disabled from all

---

[1] Citations to the Certified Administrative Record, ECF No. 8-1, are designated by "R." throughout this Opinion.

2

forms of substantial gainful employment on July 29, 2008 due to obesity, diabetes mellitus, hip bursitis, lower back pain, coronary artery disease after bypass surgery, hypertension, asthma, anxiety disorder, depressive disorder, angina, and fibromyalgia.[2] R. 13, 15, 189. Phillips's chief complaints are angina, R. 39, 43, anxiety, R. 43, 46, 66, 70-71, hip or trochanteric bursitis, R. 48-49, and asthma, R. 60. The angina, by definition, causes Phillips chest pain, R. 39, anxiety interferes with her ability to exercise responsibility on the job and to care for the health of others, R. 46, bursitis causes her pain when she stands or walks, R. 48-49, and asthma interferes with her ability to exercise or work vigorously. R. 60. At the hearing before the ALJ, Phillips testified that she cannot sit for "very long," R. 72, and that she can stand for only fifteen minutes. R. 73.[3]

Phillips filed applications for benefits under both Title II and Title XVIII on August 5, 2008, alleging a disability onset date of July 29, 2008. R. 162. Her claims were denied on initial consideration and on reconsideration. R. 93, 94. Thereafter, Phillips requested and received a hearing and review before an Administrative Law Judge ("ALJ"), which was held on September 9, 2010. R. 29. In an opinion dated September 20, 2010, the ALJ denied Phillips's requests for benefits after determining that she was not disabled. R. 13-27. Specifically, the ALJ found that Phillips's obesity, diabetes mellitus, hip bursitis, lower back pain, coronary artery disease after bypass surgery, hypertension, asthma, anxiety disorder, and depressive disorder were severe impairments under 20 C.F.R. § 404.1520(c). R. 15. However, the ALJ found that these impairments did not meet, nor were they medically equal to, a listed impairment, as detailed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15.

The ALJ further determined in analyzing Phillips's residual functional capacity ("RFC") that she:

---

[2] The ALJ found that the last two alleged conditions—angina and fibromyalgia—were not severe. R. 15.

[3] Phillips testified at the hearing that while she can physically stand for more than 15 minutes, when she does exceed this limit, such as when she goes to the grocery store, she is unable to do "anything" the next day. R. 73.

can occasionally crouch, crawl, and stoop; can never climb ladders, work at heights, or lift overhead; cannot work in a setting where life or limb is at risk; and requires an indoor, temperature-controlled environment free of excessive fumes and other pulmonary irritants.

R. 17. Based on this RFC and the opinion testimony of a vocational expert who testified at the hearing, the ALJ found that although Phillips could not perform her immediate past work as an LPN, there were jobs at the light and unskilled level of exertion that Phillips could perform and that her past relevant work as an LPN provided her with transferable skills to light and skilled positions. R. 27. Specifically, the ALJ concluded that, "considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 27. The Appeals Council denied review of the ALJ's decision, R. 1-3, and Phillips now appeals.[4]

## III. DISCUSSION

Phillips's Motion for Summary Judgment makes various arguments, but three predominate: a finding of disabled on Phillips's subsequent application justifies a remand, the ALJ erred in weighing the opinions of Phillips's treating sources, and the ALJ's decision is not supported by substantial evidence. The Court will address each argument in turn.

### A. Finding of "Disabled" on Subsequent Application

While Phillips pursued an appeal of the ALJ's decision in this Court, she also filed a new claim for DIB benefits. Since this appeal was pending, she alleged a disability onset date of September 21, 2010, the day after the ALJ's unfavorable decision on the initial claim. On her subsequent application, the Social Security Administration determined she was disabled and entitled to benefits as of her second alleged disability onset date.

---

[4] Phillips has met the insured status requirements of the Act at all relevant times covered by the Commissioner's final decision. 42 U.S.C. §§ 416(i) & 423(a).

4

Phillips argues that the finding of disabled on her subsequent application constitutes "new" and "material" evidence that would justify a remand to the Commissioner for further determination, under the sixth sentence of 42 U.S.C. § 405(g). Sentence six provides, "The court may . . . remand the case . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." Id. In support of this argument, Phillips cites Hayes v. Astrue, 488 F. Supp. 2d 560, 565 (W.D. Va. 2007), which relies on the common-sense inference that disability usually does not occur overnight and, consequently, a subsequent finding of disabled just after the initial finding of not disabled may cast doubt on the initial determination.[5] The reasoning of Hayes, however, does not withstand closer scrutiny, most importantly because it is unsupported by the statutory text, as persuasively explained in Allen v. Comm'r of Soc. Sec., 561 F.3d 646, 654 (6th Cir. 2009).[6]

In Allen, the Sixth Circuit held that remanding the case simply upon a subsequent finding of disabled is an incorrect application of sentence six.

> If a subsequent favorable decision—separated from any new substantive evidence supporting the decision—could itself be "new evidence" under sentence six, the only way that it might change the outcome of the initial proceeding is by the power of its alternative analysis of the same evidence. But remand under sentence six is not meant to address the "correctness of the administrative determination" made on the evidence already before the initial ALJ. [Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991)]. In addition, it is overly broad to read the words "new evidence" in sentence six to include a subsequent decision based on the same evidence. In Melkonyan, the Court noted that the legislative history of § 405(g) shows that "Congress made it unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence' in Social Security cases." Id. at 100.

---

[5] The ALJ's decision in the present case was dated September 20, 2010, and the onset date in the later-filed action was determined to be September 21, 2010.

[6] The Fourth Circuit does not have a published opinion directly addressing the issue, and other courts have disagreed over whether Allen or Hayes employs the better approach. See, e.g., Atkinson v. Astrue, No. 5:10-CV-298, 2011 WL 3664346, *17 (E.D.N.C. July 20, 2011) (citing cases and finding the Allen approach persuasive), report and recommendation adopted, No. 5:10-CV-298, 2011 WL 3664858 (E.D.N.C. Aug. 18, 2011).

5

> A sentence six remand would be appropriate based on [plaintiff's] subsequent favorable decision only if the subsequent decision was supported by new and material evidence that [plaintiff] had good cause for not raising in the prior proceeding. It is [plaintiff's] burden to make this showing under § 405(g), but he has failed to meet this burden. On appeal, [plaintiff] does not argue that there is any new substantive evidence that might change the outcome of the previous denial, but instead relies exclusively on the existence of the subsequent decision. To the extent that [plaintiff] argues that remand is appropriate based on the *possibility* of new and material evidence, this contradicts the clear language of § 405(g) that requires a *"showing that there is new evidence* which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (emphasis added).

Allen, 561 F.3d at 653 (footnote and internal citation omitted). Allen cogently articulates a better approach than Hayes does. First, the time periods considered by the initial and subsequent determination are distinct and separate. See Albright v. Comm'r of Soc. Sec. Admin., 174 F.3d 473, 476 (4th Cir. 1999) (specifically approving of the Agency's treatment of subsequent applications as separate from initial claims).

Second, and most importantly, the Allen approach is more consistent with the statutory text. Hayes does not address how the subsequent favorable determination squares with the statutory requirements that Phillips produce "new evidence" that is "material" and show "good cause" why she did not originally present that evidence. It unduly stretches the statutory language to hold that a reanalysis of the same or similar evidence can be termed "new evidence."

Further, while the Hayes court allowed remand based simply upon a showing that the subsequent decision *may* constitute new and material evidence, see Hayes, 488 F. Supp. 2d at 565 ("[W]here a second social security application finds a disability commencing at or near the time a decision on a previous application found no such disability, the subsequent finding of a disability *may* constitute new and material evidence.") (emphasis added), § 405(g) requires this showing of Phillips *before* the remand is ordered. ("The court may . . . remand the case . . . but *only upon a showing* that there is new evidence which is material . . . .") (emphasis added). This

6

burden is especially relevant in the instant case, where Phillips has not advised the Court of the reasons for the finding of disability on the subsequent application. It contravenes the requirements of § 405(g) to remand on the mere possibility that new and material evidence may be discovered or presented to the ALJ. But see Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (remanding under § 405(g) because there was a "'reasonable possibility' that the subsequent grant of benefits was based on new evidence not considered by the ALJ").

In short, the Court is persuaded by the thorough analysis in Allen. Accord Jackson v. Astrue, 402 F. App'x 717, 718 (3d Cir. 2010); Winston v. Astrue, 341 F. App'x 995, 998 (5th Cir. 2009). But see Luna, 623 F.3d at 1035. Section 405(g) does not allow a sentence six remand simply because the record evidence is such that two different factfinders could each reach a contrary decision within the "zone of choice" accorded to them. See Jirau v. Astrue, 715 F. Supp. 2d 814, 826 (N.D. Ill. 2010); see also Hancock, 667 F.3d at 472 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ.").

In this case, therefore, where Phillips has not offered any "new evidence" other than the Notice of Award, ECF No. 14-1, the Court cannot remand based on the possibility of new and material evidence. See also Sayre v. Astrue, Civ. No. 3:09-01061, 2010 WL 4919492, at *4 (S.D.W. Va. Nov. 29, 2010) (finding Allen persuasive but remanding because the court found the evidence underlying the subsequent determination to be new and material); id. ("[The Allen] approach makes sense because using a subsequent decision as independent evidence is tantamount to a collateral attack on the initial decision. Permitting a claimant to obtain a remand in a similar case would run counter to the need for finality and consistency between SSA disability determinations.").

## B. The ALJ Did Not Err in Affording Little Weight to the Opinion of Claimant's Treating Physician

The ALJ did not err in failing to give controlling weight to the opinion of Phillips's treating physician and cardiologist, Dr. Bushkar, because his opinion is inconsistent with his own treatment notes and the other evidence in the record. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," the ALJ is required to give it "controlling weight." 20 C.F.R. § 404.1526(c)(2). In reaching the conclusion that Phillips can perform a limited range of light work, the ALJ gave Dr. Bushkar's opinion little weight. R. 25.

Dr. Bushkar saw Phillips on eleven occasions before filling out the physical capacities questionnaire. See R. 716-17 (8/16/07), 718 (1/24/08), 719-20 (3/4/08), 721 (3/13/08), 722-23 (5/30/08), 724-25 (6/12/08), 726 (8/25/08), 727-28 (12/11/08), 729-33 (7/29/09), 734-35 (10/20/09), 736-42 (2/2/10), 744 (8/25/10) (physical capacity questionnaire). The frequency of these visits generally decreased and Dr. Bushkar's treatment notes indicate that Phillips's medical condition stabilized as time passed. In fact, Dr. Bushkar performed extensive testing on February 2, 2010—Phillips's final visit before Dr. Bushkar filled out the questionnaire—and the results were unremarkable. See R. 742 (noting no evidence of blood clots, cardiac size was mildly enlarged, and no evidence of acute abnormality in the chest). Yet in the questionnaire, Dr. Bushkar opined that Phillips could stand/walk for a total of one hour and sit a total of two hours during the workday, could only occasionally lift/carry five pounds, and that she had limited ability to push/pull and to perform repetitive motion. R. 744. The Court concludes that there is substantial evidence to support the ALJ's conclusion that these limitations were incongruent with the rest of Phillips's treatment and medical history.

8

First, as the ALJ noted, if Phillips's condition were truly as serious as Dr. Bushkar's questionnaire stated, "one would expect to see more frequent and aggressive treatment." R. 25. Frequent appointments and concerns over her angina characterized Phillips's initial interactions with Dr. Bushkar. See, e.g., R. 719-20 (3/4/2008, admitting Phillips to hospital to "make sure there is no evidence of unstable angina"); R. 721 (3/13/2008, allowing Phillips to return to work but limiting her to 32 hours a week); R. 722 (5/30/2008, advising Phillips to "stay off work at this point").[7] Dr. Bushkar's treatment notes indicate, however, that Phillips's condition was stable in the two years leading up to the time he filled out the questionnaire. See R. 727 (12/11/2008, "She has no new cardiac complaints just has the wheezing associated with the productive cough."); R. 730 (7/29/2009, treatment plan was to "Continue current medications and continue heart healthy diet"); R. 736 (2/2/2010, same treatment plan). Despite her stable cardiac condition, Dr. Bushkar issued severe limitations, including a limit on the weight Phillips could occasionally carry (five pounds) and the amount of time she could sit.[8] These restrictions apparently were new to Phillips as well, who testified at the hearing that she first heard of the five-pound lifting restriction when Dr. Bushkar filled out the physical capacities questionnaire. R. 74-75. Before hearing of this restriction, Phillips had regularly lifted *patients* as part of her LPN duties. R. 74. This unfamiliarity with her own doctor's limitations, along with the apparent ability to lift patients without adverse health consequences, underscores the lack of record evidence to support the limitations recommended by Dr. Bushkar.

---

[7] Dr. Bushkar then released Phillips to work on a PRN [as needed] basis on June 12, 2008, R. 724, but an LPN in Dr. Bushkar's office, C. Christensen, wrote Phillips an indefinite doctor's leave note on 7/29/2008. R. 366. Phillips testified at the hearing that Dr. Bushkar wrote the latter note for her. R. 42-43. While the handwriting is not entirely legible, it appears C. Christensen signed the note.

[8] Furthermore, Dr. Bushkar's cardiology specialty made it more reasonable for the ALJ to give his opinion little weight to the extent his physical capacities questionnaire considered Phillips's non-cardiac-related ailments. Dr. Bushkar only actively treated Phillips for angina, but not bursitis, anxiety, or asthma, the other impairments for which she sought a finding of disabled.

9

While not before the ALJ, a letter Dr. Bushkar wrote to the Appeals Council provides further evidence for giving his opinion little weight.[9] R. 750. In that letter, Dr. Bushkar stated that Phillips "still gets *occasional* chest pains *from time to time*. Certainly these chest pains, which at times are associated with exertion, *could* limit her ability to take part in employment *which required vigorous physical activity*." R. 750 (emphasis added). The ALJ's finding that Phillips could perform a limited range of light work is consistent with Dr. Bushkar's post-hearing letter. In fact, when viewed in context, Dr. Bushkar's physical capacities questionnaire is anomalous to the rest of Phillips's treatment history and medical evidence. Having reviewed Phillips's medical history, the Court concludes that substantial evidence supports the ALJ's decision not to give controlling weight to Dr. Bushkar's opinion as to Phillips's limitations.

### C. The ALJ Appropriately Gave Little Weight to Dr. Heil's Opinion

Phillips next argues that the ALJ did not fully consider the limitations imposed by Dr. Heil, her psychologist. Dr. Heil saw Phillips on four or perhaps five occasions, see R. 689-95, beginning four months before he submitted a medical source statement as to her limitations.[10] In that statement, Dr. Heil opined that Phillips had "extreme" limitations in her "ability to maintain attention and concentration for extended periods," "ability to maintain regular work attendance,"

---

[9] In reviewing the ALJ's decision, the Court must review all of the evidence in the record, including the evidence Phillips first presented to the Appeals Council. See Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) ("The Appeals Council specifically incorporated [the treating physician's post-hearing letter] into the administrative record. Thus, we must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings.").

[10] Phillips also argues that Dr. Heil's treatment notes in fact show a worsening of her condition; thus, the ALJ's conclusion that Dr. Heil's treatment notes were inconsistent with the limitations he imposed is not supported by substantial evidence. The Court finds that the treatment notes are inconclusive as to whether the notes show Phillips's condition was worsening, improving, or remaining stable. First, the treatment notes cited by Phillips to support a worsening of her condition consist entirely of the "Symptoms" portion of the notes. From Phillips's April 20, 2010 visit, Dr. Heil wrote on the "Symptoms" line: "Acute worsening of depression at news of not being appropriate candidate for hip bursa surgery." R. 692. From Phillips's May 12, 2010 appointment, he wrote "helplessness and hopelessness" on the "Symptoms" line. R. 691. Phillips reads "helplessness" as "hopeless mess," which is also a reasonable interpretation of the handwritten note, where an "N" followed by an "E" looks much like an "M." Given these considerations, the Court concludes that the notes indicate a slight worsening at most and more likely that her condition was relatively stable throughout her treatment by Dr. Heil.

10

and "ability to tolerate ordinary work stresses." R. 748-49. He also opined that she had "marked" limitations in two other categories and "moderate" limitations in seven other categories. R. 748-49.

The ALJ gave Dr. Heil's opinion as to Phillips's limitations little weight because the limitations were inconsistent with Dr. Heil's treatment notes as well as the record as a whole. In this case, substantial evidence supports the ALJ's decision to give Dr. Heil's opinion little weight. First, Phillips only saw Dr. Heil on a small number of occasions before Dr. Heil opined that she possessed the cited limitations. Second, Phillips's primary medical reasons for inability to work are angina, hip bursitis, anxiety, and asthma. As a psychologist, Dr. Heil is specially qualified to comment on Phillips's psychological disorders, including anxiety, but anxiety is a small part of Phillips's reasons for being unable to work. At the hearing before the ALJ, Phillips discussed her anxiety only in the context of working as a charge nurse. See R. 46.

Third, responding to the "extreme" limitations imposed by Dr. Heil, the ALJ determined that the primary obstacle to increased concentration was Phillips's pain, see R. 217 ("Q: How long can you pay attention? A: If pain isn't persistent, a long time."), and Dr. Heil, who was not specially qualified to assess her pain, relied on Phillips's self reports for a description of her pain. See R. 746. In any event, the ALJ found the reports of pain to be only partially credible, R. 23, a conclusion the Court determines is supported by substantial evidence. See R. 23-24; infra III.D. As to work-related stress, the ALJ specifically found that Phillips's RFC determination included a limitation on working in a "setting where life and limb is at risk," R. 17, Phillips's chief complaint in regards to her anxiety. See R. 46. Fourth, Phillips reported to Dr. Heil that she had diminished attention, concentration, and memory but Dr. Heil found them intact upon gross

11

observation; and Phillips's reports of daily living activities did not comport with Phillips's and Dr. Heil's reported limitations.

Finally, Phillips argues that the ALJ's consideration of her activities of daily living as evidence to grant Dr. Heil's opinion little weight is improper. See ECF No. 14 at 17 ("[T]he Commissioner's use of daily activities as a basis to discredit the plaintiff's testimony about vocational limitations is questionable."). The Court notes that evidence of activities of daily living can be either proper or improper evidence in Social Security cases, depending on its use. For example, 20 C.F.R. § 404.1572(c) plainly states that participation in daily activities is not evidence of participation in substantial gainful activity. However, 20 C.F.R. § 404.1529(c)(3)(i) specifically allows consideration of daily activities evidence for determining the intensity and persistence of pain symptoms and the extent to which those symptoms may limit the claimant's capacity for work. The Court is satisfied that the ALJ's use of daily activities evidence falls comfortably within § 404.1529(c)(3)(i). The ALJ viewed the evidence as undermining the opinions of Dr. Bushkar and Dr. Heil, noting that their prescribed limitations would seem to preclude or at least limit the daily activities in which Phillips regularly engaged. R. 25. Conversely, even if the use of this evidence were improper, the Court concludes that there is otherwise substantial evidence in the record to support the ALJ's decision.[11]

In conclusion, substantial evidence in the record supports the ALJ's decision to grant Dr. Heil's opinion little weight.

---

[11] The principal case cited by Phillips in support of this argument implies that daily activities evidence, proper under 20 C.F.R. § 404.1529(c)(3)(i), becomes problematic when it assumes "controlling status." Milam v. Barnhart, No. 4:03-cv-25, 2004 U.S. Dist. LEXIS 22855, at *6 (W.D. Va. Jan. 14, 2004), report and recommendation adopted, 2004 U.S. Dist. LEXIS 22857 (W.D. Va. Jan. 30, 2004). Such is not the case here, as demonstrated by the other evidence noted above for giving Dr. Heil's opinion little weight.

12

## D. The ALJ's Finding that Phillips Can Perform a Limited Range of Light Work Is Supported by Substantial Evidence

Phillips next argues that the ALJ's finding that she can perform a limited range of light work is not supported by substantial evidence. She makes two objections: (1) the ALJ erred in granting greater weight to the agency physicians and psychologist than Phillips's treating sources; and (2) the ALJ erred in affording little weight to *both* the agency and treating physicians in their opinion that Phillips was limited to standing/walking two hours in a eight-hour day.

The Court has already discussed the substantial evidence in the record that underlies the ALJ's decision to grant little weight to the opinions of Dr. Bushkar and Dr. Heil. Therefore, as to the first objection, the Court concludes that there is substantial evidence to support the ALJ in granting more weight to the agency physicians than to the treating sources because of their review of Phillips's record and the agency physicians' familiarity with the workings of the Social Security disability program.[12]

As to the second objection, assuming that the agency physicians did in fact limit Phillips to two hours of standing/walking per eight-hour workday as she claims,[13] there is substantial

---

[12] This is true even though the agency doctors did not have the entirety of the record available to them at the time they made their determinations. As Phillips notes, ECF No. 14, Pl. Mem. Supp. M. Summ. J. at 6, over 100 pages were added to the record after the last of the agency reviews. R. 637-752. However, these later additions to the record are largely cumulative or duplicative. Dr. Bushkar's notes, R. 716-42, appear to be duplicative. See R. 487-507. The remaining additions to the record concern Phillips's fibromyalgia, chronic cough and sinusitis, and her psychological issues. As to her fibromyalgia, it had long been diagnosed, see, e.g., R. 93, 189, 240, and in fact was listed as one of the primary diagnoses for both agency reviews. R. 443, 630. Phillips's chronic cough and sinusitis do not appear to bother her currently since Phillips lists neither of these ailments in the complaint. ECF No. 3, Compl. ¶ 8. Phillips's psychological issues were also well-documented by the time of the agency reviews, see 450-63, 616-29 (psychiatric agency reviews listed the same diagnoses as in the later additions), although the ALJ did credit the newly added evidence to the extent that she stated—in giving the agency psychiatrists only "some weight"—that "claimant is somewhat more limited than initially determined." R. 25.

[13] This contention is not wholly without doubt. Both agency physicians marked that Phillips could stand/walk "*at least* 2 hours in an 8-hour workday." R. 444, 631 (emphasis added). The previous option was "less than 2 hours in an 8-hour workday" and the next option was "about 6 hours in an 8-hour workday." R. 444, 631. This would seem to mean that it is the opinion of both agency physicians that Phillips can stand/walk a total of at least two but not more than six hours per workday. The ALJ, however, seemed to interpret their opinions as limiting Phillips to two hours

13

evidence in the record that Phillips is not limited to standing/walking two hours in an eight-hour day. As the ALJ stated:

> Medical imaging and diagnostic testing have revealed no worse than moderate abnormalities, and the claimant at various points has reported at least partial relief of symptoms with medication, heat, and injections. [R. 371 (taking nitroglycerine helped angina); R. 469 (as to fibromyalgia, "Heat helps. Cymbalta helps some."); R. 476 (injection of cortisone temporarily helped bursitis); R. 517 (Lortab "helps to a very limited degree" with shoulder and hip pain); R. 649 (Norflex and Lortab helping with fibromyalgia); R. 716, 717, 721, 724 (listing medications); R. 725 ("exertional chest tightness symptoms . . . are better on Ranexa")]. The evidence reveals numerous doctor's appointments when the claimant failed to complain of some of her alleged symptoms, [R. 726 (claimant mentioned only a productive cough, wheezing associated with the cough, and "a small abscess around her fingernail"); R. 729-30 (no chest pain reported, Phillips just presented for a follow-up appointment); R. 736 (no chest pain reported, Phillips just presented for a follow-up appointment)], and doctors have found some of her impairments to be stable or controlled with medication. [R. 473 (Kenalog/cortisone injection helped bursitis); R. 476 (cortisone injection helped bursitis); R. 492 (Phillips reported angina "significantly better" and "no other new complaints" after starting on Ranexa); R. 599, 601 (illegible); R. 714 ("The patient has had physical therapy in the past for treatment and feels it is very helpful. She also had a trochanteric bursa injection that she did find helpful."); R. 726, 736 (Phillips's cardiac status was stable and she was simply told to "Continue Current Medications and Continue Heart Healthy Diet")]. Further, doctors regularly found the claimant to be in no acute or obvious distress, [R. 375 ("no acute distress" box is checked, upper left-hand corner); R. 512 (Phillips "in no acute distress but somewhat anxious"); R. 515 (Phillips "was in no obvious distress"); R. 518 (same); R. 660 (same); R. 662 (same); R. 669 (same); R. 706, 707, 709, 714 (same)], to have a steady gait and to ambulate independently, [R. 370 ("gait steady"); R. 373 ("ambulates independently"); R. 541, 561 ("steady gait" and "ambulates independently")], and to have no recent limitation in the performance of activities of daily living. [R. 375 ("no recent limitation [sic] performance of ADLs"); R. 541, 561 (same)].
>
> Despite allegations of debilitating pain, the claimant has failed to heed the advice of her doctors, who repeatedly urged her to participate in water therapy. [R. 473 ("Water exercise was recommended."); R. 650 (same); R. 709 ("We talked quite a bit about [water exercise] today.")]. She testified that she did not start water therapy because she has been working with Dr. Dorsey for the past year and a half to get her asthma under control. The claimant then admitted, however, that she no longer sees Dr. Dorsey, she has not seen Dr. Dorsey in about

---

of walking/standing, see R. 24-25 ("The undersigned [i.e., the ALJ] gives considerable weight to [the opinions of the agency physicians]. Nonetheless, the undersigned has determined that the objective findings and the claimant's treatment history do not support a finding that the claimant can stand/walk for only two hours a day."), and the Court will do the same.

14

> six months, and she never talked to the doctor about water therapy. [R. 60-63.] According to the record, the claimant reports no current use of physical therapy, biofeedback, a TENS unit, a dorsal stimulator, a morphine pump, acupuncture, massage therapy, braces or splints, herbal remedies, chiropractic adjustments, or anything similar for pain relief.
>   Severe chronic pain often results in certain observable manifestations, such as loss of weight due to loss of appetite from incessant pain (or weight gain due to inactivity from pain); muscular atrophy due to muscle guarding; muscular spasms; the use of assistive devices; prolonged bed rest; or adverse neurological signs. In the present case, no such manifestations exist. The record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or significant neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis.

R. 23-24. After careful analysis of the cited evidence in the record, the Court concludes that substantial evidence in the record supports the ALJ's decision that Phillips's reports of debilitating pain due to angina and bursitis are only partially credible.

Again, Phillips's four major problems, as reported in the hearing, were asthma, anxiety, angina, and bursitis. See supra Section II. The anxiety as it relates to Phillips's capacity for work is mostly due to her previous job as a charge nurse. See R. 46. The ALJ restricted Phillips from working in an atmosphere where "life and limb is at risk," R. 17, thus addressing work limitations due to anxiety. The ALJ also accommodated Phillips's asthma by incorporating into her RFC determination that Phillips work in a place "free from excessive fumes and other pulmonary irritants." R. 17.

Pain is the primary reason Phillips cited as to why she had difficulty standing/walking, see R. 47-48 (Phillips testifying that angina and bursitis were the two conditions that led her to apply for disability), and the ALJ determined that these allegations of pain were only partially credible. Inasmuch as other ailments may cause the standing/walking limitation, the Court concludes that the RFC determination adequately addresses them. Thus, there is substantial

15

evidence in the record that the impairments put forth by Phillips do not foreclose her from standing/walking more than two hours in an eight-hour workday.

### E. The Appeals Council Did Not Err

Phillips also faults the review of the ALJ's decision by the Appeals Council, arguing that "the Appeals Council erred in not reviewing [or] discussing Dr. Heil's report of 11/11/10 nor his opinion that Plaintiff met Listing 12.03 and/or §12.06." ECF No. 14, Pl. Mem. Supp. M. Summ. J. at 11-12. The Appeals Council, however, did review the additional evidence submitted by Phillips, see R. 1-2 (Notice of Appeals Council Action) ("In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council." Dr. Heil's 11/10/10 letter was listed on the enclosed Order.), but nonetheless denied review. See R. 1 ("We found no reason under our rules to review the Administrative Law Judge's decision. Therefore, we have denied your request for review."); R. 2 ("We found that [Phillips's stated deficiencies in the ALJ's decision and the additional evidence submitted by Phillips do] not provide a basis for changing the Administrative Law Judge's decision."). Therefore, any error must lie with the Appeals Council's failure to discuss the additional evidence. The Fourth Circuit, however, has recently held that the Appeals Council is not required to discuss the additional evidence or its reasons for denying review. Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011) ("[I]f upon consideration of all of the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review. Contrary to [plaintiff's] contention, nothing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review."). There are therefore no grounds to fault the actions of the Appeals Council.

## F. The ALJ Appropriately Considered Phillips's Fibromyalgia

Phillips argues that the ALJ erred in not finding that her fibromyalgia contributed to a finding of disabled, an argument that relies primarily on a Social Security Ruling.[14] First, it is important to note that both the diagnosis of an impairment as well as the accompanying physical limitations are necessary for Phillips to be considered disabled. See Social Security Administration, Social Security Ruling 12-2p ("As with any claim for disability benefits, before we find that a person with an [medically diagnosed impairment] of [fibromyalgia] is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.").

The ALJ addressed Phillips's fibromyalgia and found that it was not severe or did not limit her vocationally. See R. 18 ("[Phillips] said she also suffers from fibromyalgia for which she stretches but does not exercise."); R. 21 ("Dr. Bayliss found 16 of 18 typical fibromyalgia tender points present."); R. 15 (ALJ finding all impairments other than those listed not to be severe or cause not more than minimal vocationally relevant limitations; fibromyalgia was not listed).

At the hearing before the ALJ, Phillips testified that her main ailments were anxiety, asthma, angina, and bursitis. Phillips mentioned her fibromyalgia only three times at the hearing. See R. 48 (mentioning the diagnosis of fibromyalgia in passing); R. 62-3 (Phillips stating that she stretches for her fibromyalgia ("[I]f I didn't stretch, I wouldn't be able to move in the morning"), but does not exercise despite multiple doctors encouraging her to do so to help her

---

[14] While Phillips argues that the ALJ failed to follow Social Security Ruling ("SSR") 99-2p, this SSR addresses fibromyalgia only in footnote 3 in distinguishing between fibromyalgia and the related Chronic Fatigue Syndrome. See Social Security Administration, Social Security Ruling 99-2p. Phillips appears to be referring to SSR 12-2p, which she later cites.

17

fibromyalgia); R. 78 (mentioning the diagnosis of fibromyalgia in passing). In addition, both of the reviewing state agency physicians—whose reports the ALJ considered and to which the ALJ gave "considerable weight", R. 24, in deciding that Phillips had the RFC to work at light levels of exertion—listed fibromyalgia as at least one of the primary diagnoses upon which Phillips's disability claim was based. See R. 443 (listing fibromyalgia as the only primary diagnosis); R. 630 (listing fibromyalgia as one of three primary diagnoses). These agency physicians had access to the majority of Dr. Bayliss's medical records, the doctor who treated Phillips for fibromyalgia. Moreover, Phillips chose not to submit a physical capacities questionnaire from Dr. Bayliss, choosing instead to have Dr. Bushkar, a cardiologist, submit such a form.

In short, there is considerable evidence in the record before the ALJ about Phillips's fibromyalgia and the ALJ determined that her fibromyalgia was either not severe or did not portend vocationally relevant limitations. This conclusion is supported by substantial evidence.

### G. The Vocational Expert's Testimony Does Not Direct a Finding of Disabled

Phillips argues that the testimony of the vocational expert ("VE") should have been sufficient for a finding of disabled. In support of this argument, Phillips notes that when the VE considered *"the limitations set forth by Plaintiff's treating physician and treating psychologist, he opined that the limitations would preclude any competitive employment."* ECF No. 14, Mem. Supp. M. Sum. J. at 14 (emphasis added). It is true that "[i]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "The ALJ, however, has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question."

Koonce v. Apfel, 166 F.3d 1209, 1999 WL 7864, *5 (4th Cir. 1999) (unpublished). Put this way, this argument is merely another way of arguing that the ALJ's decision *in toto* is not supported by substantial evidence. Because the Court has already determined that substantial evidence supports the ALJ's decision, this argument has no merit.

## IV. CONCLUSION

The Court has determined that the ALJ's decision is supported by substantial evidence. Furthermore, a remand based on the subsequent finding of disabled is not permitted under 42 U.S.C. § 405(g). Therefore, the Court **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** the Plaintiff's Motion for Summary Judgment.

An appropriate Order shall issue this day.

ENTER: This 5th day of February, 2013.

Hon. James C. Turk
Senior United States District Judge